## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CR-0070-01-CVE** |
| | ) | **(Civil No. 20-CV-0554-CVE-CDL)** |
| | ) | |
| **GARY SCOTT MORELAND,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is defendant Gary Scott Moreland's motion to vacate, set aside or correct

sentence under 28 U.S.C. § 2255 (Dkt. # 163).  Section 2255 provides that "[a] prisoner in custody

under sentence of a court established by Act of Congress claiming the right to be released upon the

ground that the sentence was imposed in violation of the Constitution or laws of the United States

. . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

28 U.S.C. § 2255(a).  Plaintiff filed a response in opposition to defendant's motion (Dkt. # 181) and

defendant did not file a reply.  Defendant's § 2255 motion is ripe for adjudication.

## I.

On April 10, 2019, a grand jury returned an indictment against defendant and others, charging

defendant with one count of drug conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1) and

(b)(1)(A)(viii), which carried a ten-year mandatory minimum sentence and a maximum of life

imprisonment.  Dkt. # 2. On April 24, 2019, a magistrate judge appointed Keith Allen Ward, a CJA

attorney, to represent defendant.  Dkt. # 15.  On April 29, 2019, a magistrate judge held a detention

hearing and ordered defendant be detained pending trial (Dkt. # 31).[1]

On August 7, 2019, defendant waived his right to prosecution by indictment and consented

to prosecution by information, and requested a change of plea hearing.  Dkt. ## 51, 66, 67.  The

information charged defendant with one count of drug conspiracy in violation of 21 U.S.C. §§ 846

---

[1]     The magistrate judge wrote the following statement of reasons for detention:

> The nature and circumstances of offense and weight of evidence are
> described in detail in the search warrant affidavit by Officer Comfort, which
> was submitted as evidence in support of detention. The charged offense
> involves an ongoing drug conspiracy from 2017 to 2019, which was allegedly
> run by Defendant and Nichols out of Defendant's residence in Choteau,
> Oklahoma. The offense involves a forfeiture allegation against Defendant for
> over $180,000 in drug proceeds, which is based on a Rule 11 interview by
> Zachary Taylor, in which Taylor stated that he supplied [Defendant] and
> Culkins with fifty pounds of methamphetamine. According to the affidavit,
> the United States has evidence of a controlled buy from Defendant in
> February of 2018, and statements from a Source of Information of five
> different drug buys from Defendant in the summer of 2018.  Although no
> drugs were found during searches of Defendant's residence, this drug
> conspiracy evidence is directly connected to [Defendant] and carries weight
> with the Court. Further, Defendant is alleged to have committed the instant
> offense while he was in a drug court program and being supervised in Rogers
> County on a possession of controlled substance charge. This causes the Court
> concern that Defendant will not abide by any conditions set by the Court to
> assure the safety of the community. Further, the Government proferred
> testimony of Officer Comfort that this Defendant ordered violent acts against
> an individual named Shannon Peterson during the drug conspiracy, after
> Peterson allegedly stole drugs from Defendant. The United States also
> proferred evidence that Defendant did not immediately surrender to arrest,
> and attempted to assist Nichols in evading arrest and/or concealing evidence.
> Finally, Defendant told the Probation Officer that he used methamphetamine
> on a weekly basis. Considering all relevant factors, Defendant has failed to
> rebut the presumption in favor of detention, and the United States has met its
> burden of showing that no conditions of release will reasonably assure the
> safety of the community.

Dkt. # 32, at 2.

2

and 841(b)(1)(C), which carried no mandatory minimum sentence and a statutory maximum sentence of not more than twenty years.  The parties negotiated a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A).  Dkt. # 71.

Defendant admitted to the following facts in the plea agreement:

I, GARY SCOTT MORELAND, admit that beginning on or about August 2017 and continuing to on or about April 2019, within the Northern District of Oklahoma, I knowingly and intentionally conspired with others to violate federal drug laws by possessing methamphetamine with intent to distribute it.  I conspired with and provided methamphetamine and/or United States currency to Aaron Culkins, Rebecca Nichols, and others to promote and further the methamphetamine conspiracy.  I voluntarily participated in these activities.  My participation required the participation, direction, and action of others and all parties worked together for our shared mutual benefit such as monetary profit and drugs.  I agree that methamphetamine is a Schedule II controlled substance.

Id. at 7.  Defendant agreed to relinquish certain constitutional rights, including his right to plead not guilty, right to a jury trial, and right to directly appeal his conviction or sentence.  The parties stipulated that "the defendant acknowledges that under 21 U.S.C. §§ 846 and 841(b)(1)(C), the maximum statutory sentence is not more than 20 years imprisonment and a fine of not more than $1,000,000."  Id. at 9.  The plea agreement also states:

The defendant is aware that the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551 through § 3742, and 28 U.S.C. § 991 through § 998, are advisory. The district courts, while not bound to apply the Sentencing Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C.A. § 3553(a).

The sentence imposed in federal court is without parole. The defendant is further aware that the sentence has not yet been determined by the Court, that any estimate of the likely sentence received from any source is a prediction, not a promise, and that the Court has the final discretion to impose any sentence  up to the statutory maximum. The defendant further understands that all recommendations or requests by the United States pursuant to this agreement are not binding upon the Court.

3

> If the sentencing Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw defendant's guilty plea, but will remain bound to fulfill all of defendant's obligations under this agreement.

Id. at 11.  In his written petition to enter plea of guilty, defendant affirmed again that:

> From in or about August, 2017 until approximately December, 2018, I knowingly and voluntarily agreed with one or more persons including, but not limited to Aaron Culkins, to possess methamphetamine with the intention of distributing it. I personally possessed methamphetamine within the Northern District of Oklahoma with the intention of distributing it and furthering the goals of the conspiracy. I agree that methamphetamine is a Schedule II controlled substance.

Dkt. # 70, at 2.  Ward certified that he had explained the advisory sentencing guidelines to defendant and that defendant entered his plea voluntarily.  Id. at 6.  Defendant stated in his written petition that he was satisfied with the advice of counsel.  Id. at 4.

On August 7, 2019, defendant appeared with counsel for the change of plea hearing, and Ward advised the Court that defendant intended to plead guilty, pursuant to the plea agreement, to one count of drug conspiracy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  Dkt. # 67, at 1. In the hearing, defendant's attorney affirmed that the plea agreement represented the best offer made to defendant.  Dkt. # 180, at 2.  Defendant stated under oath that he was apprised of his constitutional rights, and the Court found that defendant was fully competent and that the waiver of his rights was freely, intentionally, and voluntarily made.  Id. at 6.  The Court then read the information to defendant and advised him of the elements of the offense that plaintiff would have to prove if the case proceeded to trial:

> **THE COURT:** For that charge at trial, the government would be required to prove the following elements beyond a reasonable doubt: (1) that two or more persons agreed to violate federal drug laws; (2) you knew the object of the conspiracy; (3) you knowingly and voluntarily involved yourself in the conspiracy; (4) there was interdependence among the members of the conspiracy; and (5) the overall scope of

> the conspiracy was to distribute a mixture or substance containing a detectable amount of methamphetamine.  Do you understand the nature of the charge?
>
> **THE DEFENDANT:** Yes
>
> **THE COURT:** And have you discussed the charge and the elements with Mr. Ward?
>
> **THE DEFENDANT:** Yes
>
> **THE COURT:** Do you understand that a conviction on the charge in the information carries a maximum sentence of not more than 20 years imprisonment and a fine of not more than $1 million?
>
> **THE DEFENDANT:** Yes, sir

Id. at 10-11.  The Court asked if defendant understood that neither the court nor Ward would be able to definitively determine the guideline range until after the presentence report (PSR) was prepared.

Id. at 15.  Defendant responded that he understood.  The Court also noted the following:

> **THE COURT:** Has anyone made any promises or representations or guarantees of any kind to you in order to get you to plead guilty in this case?
>
> **THE DEFENDANT:** No, sir.
>
> **THE COURT:** All right.  Has anyone told you that the court will impose any specific sentence in the event your plea of guilty is accepted?
>
> **THE DEFENDANT:** No, sir.

Id. at 17-18.  Plaintiff's counsel then made a representation of the facts that it would be prepared to prove at trial, including witness statements that defendant was engaged in a conspiracy to distribute methamphetamine with co-defendants.  Id. at 22-24.  Plaintiff was prepared to show that a DEA investigation unearthed numerous customers and subdealers who purchased methamphetamine from

5

defendant and were willing to testify at trial.[2]  Id.  The Court then asked defendant to state in his own words what he did, and defendant admitted to the essential elements of the charged offense.  The defendant admitted under oath that:

> I conspired with Aaron Culkins on or about 2017.  I agreed to do – I can read it here, but – possession of methamphetamines and sell methamphetamines within the Northern District of Oklahoma. [] Yes, I did it with other persons from on or about August of 2017 until approximately December 18 – 2018.  I acknowledge and voluntarily agreed with one or more person, including, but not limited to, Aaron Culkins, to possession of methamphetamine with intent to distribute.  I personally possessed methamphetamine within the Northern District of Oklahoma with the intent to distribute it in further of the goals of the conspiracy.  I agree that methamphetamine is a Schedule II controlled substance, sir.

---

[2]     Plaintiff's counsel stated the following:

> If this case were to proceed to trial, the United States would be able to call witnesses and present evidence to show that at least as far back of August of 2017 and continuing up until April 2019, the time of the indictment, that Mr. Moreland was engaged in a conspiracy to distribute methamphetamine with the co-defendants, Culkins, Nichols, and Mr. Griffin.  Mr. Moreland's involvement was primarily with Mr. Culkins and Ms. Nichols. Mr. Culkins operated a flea market or a warehouse-type business here in Tulsa, which –and he served as Mr. Moreland's primary source of supply and also acted as a partner in purchasing larger amounts of methamphetamine from other sources of supply.  Ms. Nichols was Mr. Moreland's -- or is Mr. Moreland's girlfriend and lived with him in Pryor. It was in Pryor that Mr. Moreland and Ms. Nichols distributed methamphetamine they received from Mr. Culkins and other sources of supply that are also under federal indictment, specifically Zach Taylor, Gordon Starks, and Keni Soberanis, which they received Mr. Soberanis' meth through Mr. Culkins, but they distributed that meth in Mayes County up until April of 2019.  During the DEA's investigation they were able to discover numerous customers and subdealers who purchased both user and subdealer amounts of methamphetamine from Ms. Nichols and Mr. Moreland. . . And the government has been in constant contact with those individuals and would be prepared to present their testimony at trial.

Dkt. # 180, at 22-23 (cleaned up).

Id. at 24 (cleaned up).  The Court accepted defendant's guilty plea and found that defendant's plea was knowing and voluntary.

The probation office prepared a PSR determining that the base offense level for an offense under 21 U.S.C. §§ 846 and 841(b)(1)(C) was 34.  After a three level reduction for defendant's acceptance of responsibility, the total offense level was 31.  Dkt. # 131, at 11.  Defendant's criminal history category was calculated as IV.  Id.  The advisory guideline range for defendant's offense was 151 to 188 months imprisonment, followed by 3 years of supervised release.  Id.  Ward filed a motion requesting that the Court grant defendant a substantial downward variance based on defendant's stale criminal history, struggles with alcohol use, and continuing support from family and friends.  Dkt. # 108.

On December 11, 2019, in the sentencing hearing, the Court again informed defendant of his rights.  The Court then gave plaintiff an opportunity to speak.  Plaintiff stated that defendant was not only the "leader and organizer of a conspiracy that trafficked large amounts of methamphetamine," but also was "engaged in violence to protect this trade, commissioning others to capture someone who had stolen from them and then engaged in a beating of that person."  Dkt. # 131, at 3.  Plaintiff stated that defendant "was recorded on jail calls discussing the case, coordinating strategies, discussing where to hide the victim, or conceal the location of that victim of the beating with the co-conspirator in this case."  Id. at 4.  Ward was then given the opportunity to speak at length about defendant's alleged minimal participation in the conspiracy.  Id. at 5.  Ward identified many mitigating factors, including that defendant did not have any contact with cartel members, that plaintiff's investigation relied in part on the testimony of an individual who is a heroin addict and also guilty of distribution, that a corrupt police officer took a role in the investigation, and that

plaintiff did not recover drugs from two searches of defendant's house. Id. at 5-7.  Ward additionally noted that defendant cooperated with police and that his criminal history was more minor than what the points reflected.  Id. at 7-8.

The Court ultimately granted defendant's motion and varied downward four levels, reducing defendant's total offense level to 27.  Id. at 12-13.  Combined with his criminal history category of IV, the resulting variance guideline range was 100 to 125 months, much lower than the advisory guideline range of 150 to 188 months.  The Court sentenced defendant to 100 months imprisonment. Id. at 14.  A judgment and commitment was entered on December 13, 2019.  Dkt. # 123.

Defendant did not appeal his conviction and sentence.  On July 14, 2020, defendant filed a motion for reduction in sentence for compassionate release under 18 U.S.C. § 3582(c)(1)(A), due to the COVID-19 pandemic.  Dkt. # 160, at 1.  The Court dismissed the motion without prejudice because defendant failed to exhaust all administrative remedies.  Dkt. # 161, at 3.  Defendant then filed a second motion seeking compassionate release.  Dkt. # 162.  The Court denied the motion on its merits.  Dkt. # 169.  Defendant filed the instant § 2255 motion on October 30, 2020 (Dkt. # 163). Plaintiff responded on December 4, 2023, and attached an affidavit of Keith Ward (Dkt. ## 181, 181-1).  Defendant did not reply.

## II.

Defendant's § 2255 motion asserts various grounds of ineffective assistance of counsel.[3]

---

[3]    In his § 2255 motion (AO Form 243), defendant raised three grounds of ineffective assistance of counsel (Dkt. # 163, at 1-12); however, in his attached "memorandum of law" he reasserted these grounds and added a new claim that the Court improperly considered a recent Oklahoma drug court charge–in the pretrial detention hearing–which should have been expunged from the record.  Dkt. # 163, at 25. The Court will address this last "claim" as part of defendant's pretrial detention arguments (ground one).

Ground one is that defendant was improperly detained prior to sentencing.  He alleges that plaintiff, in the pretrial detention hearing, falsely claimed that defendant had flushed methamphetamine down the toilet.  Dkt. # 163, at 4.  He claims that he told his attorney that a test of the residue on his toilet "would test [only] for a turd," and that because Ward did not request a test proving defendant's innocence, he was ineffective.  Id.  Defendant further alleges that every sentence in the magistrate judge's written order for detention was false; he claims that no drugs were ever found in his residence, that the forfeiture allegation was dismissed, that the government's informants falsely testified to gain better plea deals, and that the officer testimony was false hearsay.  Id. at 19.  He also argues that he had successfully completed his state drug court program, and that plaintiff withheld this fact from the magistrate judge.  Id. at 25.  But for this alleged false evidence, defendant claims he would not have been detained before trial. Id. at 4.

In ground two, defendant alleges that Ward failed to file a motion to suppress evidence. Defendant purports that the "sole" evidence against him was the false testimony of "incentivized" informants and "government 'snitches' who were trading lies for liberty."[4]   Id. at 21.  He argues that if Ward had moved to suppress this testimonial evidence while defendant was awaiting trial, he would have proceeded to trial–instead of entering a plea agreement–and been exonerated. Defendant also argues that Ward should have moved to suppress plaintiff's "evidence" presented at the sentencing hearing.  He states that "my attorney failed to object or move to suppress the evidence [at sentencing] [and] failed to present the fact that no methamphetamines' [sic] was ever found, nor

---

[4]     Defendant simultaneously argues in his memorandum of law that plaintiff had "10,000 pages of discovery" that Ward apparently refused to share with defendant or his wife. Id. at 4.

was there any evidence on my phone, no videos or audio of me interacting with any member of the Cartel." Id.

In ground three, defendant advances two arguments: (1) that he believed his plea agreement was for a four-year sentence and (2) that Ward gave him bad advice to plea guilty instead of going to trial Id. at 7. As to the first argument, defendant alleges that Ward told him he could secure a four year sentence "just by making a phone call" because plaintiff was primarily "after" his co-defendant Aaron Culkins. Id. at 7, 20. He also argues that Ward refused to share discovery with him or his wife. Defendant states that he agreed to the change of plea based on his limited knowledge of plaintiff's case and the understanding he would receive a four-year sentence. Defendant then argues that when he realized he may be subject to a longer term of imprisonment, he protested, and Ward allegedly instructed him to stay silent or "the judge would throw the book at him." Id. at 7, 24. Defendant alleges that he would have never pled guilty and would have been exonerated at trial had he not adhered to counsel's advice. Id. at 7.

Plaintiff filed a response, refuting the above arguments and attached an affidavit of Ward denying defendant's factual allegations. Dkt. # 181, at 1. Addressing defendant's ground one, plaintiff notes that the magistrate judge acknowledged that no drugs were found during searches of defendant's home and defendant failed to present any evidence that witness testimony was false. Regardless, plaintiff observes that it may proceed by proffer at detention hearings because the "'rules concerning admissibility of evidence in criminal trials do not apply.'" Id. at 6 (quoting 18 U.S.C. § 3142(f)(2)(B)). Addressing defendant's ground two, plaintiff argues that Ward did not file a motion to suppress evidence because such a motion would have been meritless; the search of defendant's home was conducted pursuant to a federal search warrant, and no evidence suggested

that the witness testimony violated defendant's constitutional rights.  Plaintiff further states that the Tenth Circuit pattern instructions permit a conviction based on testimony of alleged accomplices. Id. at 8.  Addressing defendant's ground three, plaintiff first asserts that defendant was advised of the maximum and minimum penalties he faced and had indicated his understanding of the terms of his plea agreement numerous times.  Id.  Ward, in his affidavit, "categorically denies" that he told defendant he could secure him a four-year sentence.  Id. at 3.  As to defendant's second argument, plaintiff asserts that going to trial would not have been rational under the objective circumstances of the case.  Plaintiff notes that defendant made specific admissions of guilt, that officers arrested him after a controlled buy, and ample testimonial evidence implicated him.  Id. at 9-10.  Ward ultimately negotiated a plea agreement that substantially lowered defendant's sentence; had he been convicted following a jury trial of the offense charged in the indictment, he would have faced a sentence over two times as long as the sentence he ultimately received.

### III.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge ... [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential. "[I]t

is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993); see also United States v. Spaeth, 69 F.4th 1190, 1197 (10th Cir. 2023) ("a defendant asserting pre-plea constitutional violations 'must demonstrate that, but for counsel's errors, the defendant would not have pled guilty and would have insisted upon proceeding to trial'") (quoting In re CCA Recordings 2255 Litig. v. United States, No. 19-cv-2491, 2021 WL 1244789 (D. Kan. Apr. 2, 2021)) (internal quotations omitted).  If the defendant cannot produce evidence of "how he would have responded if he had received effective assistance of counsel, the inquiry will focus on the objective evidence."  Heard v. Addison, 728 F.3d 1170, 1184 (10th Cir. 2013).

The Court addresses each ground in turn.

**GROUND 1: Defendant's claims arising from pretrial detention**

This Court does not have jurisdiction to reach defendant's arguments pertaining to the impropriety of his pretrial detention.  "Section 2255 allows district courts 'to vacate, set aside or correct the sentence.'  It does not reach pretrial detention.  Because § 2255 does not authorize any relief that would remedy [defendant's] allegedly wrongful pretrial detention, the district court did not have jurisdiction over claims based on ineffective assistance at the bond-revocation hearing." United States v. Etuk, No. 23-5011, 2023 WL 6060327, at *2 (10th Cir. Sept. 18, 2023) (internal

citations omitted).[5]   Defendant alleges that he would not have been detained pending trial had his counsel objected to the alleged "false" presence of methamphetamine residue.  Section 2255 grants this Court jurisdiction to remedy wrongful sentencing.  The Court therefore cannot consider defendant's arguments arising from his pretrial detention.[6]

**GROUND 2: Ward's alleged failure to move to suppress evidence**

Defendant's argument that Ward rendered ineffective assistance by failing to move to suppress evidence pending trial is meritless.  Defendant broadly asserts that plaintiff's evidence relied entirely on unreliable witness testimony; this is unsupported by the law and the facts.  First, the proper avenue to "suppress" witness testimony is through cross-examination during trial, not through a motion to suppress while negotiating a plea agreement.   Notwithstanding, "[the Tenth Circuit has] stated that '[a] conviction may stand merely on the uncorroborated testimony of an accomplice.'"  United States v. Lettig, 209 F. App'x 832, 836 (10th Cir. 2006) (quoting United States v. Magallanez, 408 F.3d 672, 682 (10th Cir.2005)).  Moreover, defendant has not presented any facts–other than alleging that some of the testimony implicating defendant came from co-defendants–supporting that the testimonial evidence was "false hearsay."  Indeed, Ward concluded

---

[5]     This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[6]     The Court notes, however, that many of defendant's allegations against Ward of alleged ineffective assistance of counsel at the detention hearing are contravened by the magistrate judge's written statement for detention.  The magistrate judge specifically noted that no drugs were found in defendant's residence and that many other factors contributed to his detention, including his admission that he still used methamphetamine.  See supra fn 1.  Defendant's successful completion of the Rogers County Drug Court program (PSR, at 10)–while relevant (and considered) in the PSR–did not overcome the many other reasons in favor of pretrial detention.  In fact, defendant engaged in the instant conspiracy while he was in the drug court program and being supervised in Rogers County on a possession of controlled substance charge.  Dkt. # 32, at 2.

that "a large number of seemingly incredible witnesses whose testimony is corroborated by each other is often believed by a jury [and, defendant] had provided me with admissions of his guilt that would have prevented him from testifying as a witness [had he gone to trial]."  Dkt. # 181-1, at 5. Defendant has not provided any other basis for how this witness testimony, proffered by plaintiff in a change of plea hearing, violated his constitutional rights.  It is apparent that Ward exercised reasonable judgment in choosing to refrain from filing meritless suppression motions.[7]  Defendant has not demonstrated that Ward's assistance fell below the standard expected from a reasonably competent criminal attorney.

Defendant's argument that Ward should have moved to suppress plaintiff counsel's statements at the sentencing hearing is unreasonable given the nature of a sentencing hearing. "Unlike at a criminal trial where the Federal Rules of Evidence limit the types of admissible evidence, at a sentencing hearing the court can have access to any relevant information, as long as it adheres to a preponderance of the evidence standard. [] Sentencing courts historically rely on a wide array of information relevant to the individualized needs of the offender, including hearsay evidence containing a minimal indicia of reliability."  United States v. Ruby, 706 F.3d 1221, 1227 (10th Cir. 2013) (quoting USSG § 6A1.3).  Plaintiff, at the direction of the Court, summarized the evidence it had against defendant, including defendant's admission to the charged offense during his

---

[7]     It is unclear based on defendant's § 2255 motion if he believes that Ward should have challenged the searches of defendant's residence.  Nevertheless, Ward states that he chose not to challenge the search of defendant's home because it was conducted pursuant to a federal search warrant.  "[T]he search warrant in his case was issued by a judicial officer based on an affidavit of law enforcement.  I reviewed the affidavit and it was my opinion that the affidavit was more than sufficient to support the issuance of a search warrant.  Id. at 4.

change of plea hearing,[8] defendant's participation in a controlled buy orchestrated by the police, testimony from other customers and subdealers, and prison call logs between defendant and co-defendants discussing strategies for quelling victim testimony. Ward, then, contrary to defendant's allegations, comprehensively addressed all of defendant's evidentiary "objections." He challenged the potential unreliability of witness testimony, noted that some of the investigation rested on the work of a corrupt police officer, argued that defendant was just an end distributor for the cartel, and asserted that the searches of defendant's house revealed no drugs. Ward then successfully petitioned the Court for a downward variance and secured defendant a lower sentence. Defendant has failed to demonstrate that Ward was ineffective for failing to "suppress" evidence at the sentencing hearing, and he certainly cannot show that he was prejudiced as a result of receiving a lower sentence.[9]

**GROUND THREE: Ward's alleged statements and advice to plead guilty**

Defendant's allegations regarding Ward's out of court statements are contravened by both the record and Ward's affidavit. First, Ward denies that he told defendant he would receive "four

---

[8]     "Without doubt, the record of the Rule 11 proceedings are part of the 'records' contemplated by § 2255 and is intended to facilitate the disposition of post-conviction actions, where claims of an involuntary plea and ineffective counsel are raised. [T]he truth and accuracy of [defendant's] statements made at the Rule 11 proceedings should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." United States v. Hedman, 527 F.2d 20, 22 (10th Cir. 1975) (cleaned up).

[9]     The Court also notes that the "Offense Conduct" section of the PSR does not mention residue found in defendant's toilet or testimony from defendant's co-defendants. The offense conduct instead notes that Pryor Police officers conducted a controlled buy of methamphetamine from [defendant] at his residence, that three individuals who were arrested in 2017 alleged that they purchased methamphetamine from defendant, that the search of the flea market uncovered 73.9 grams of packaged "China white" heroin, 54.3 grams of "black tar" heroin, and 311 rounds of various caliber ammunition, and that a DEA search of defendant's house revealed two cell phones and $2,550 in cash. PSR, at 5-6.

years just by making a phone call." Id. at 3.   Nevertheless, it was abundantly clear in the plea

agreement and petition to enter plea of guilty that defendant faced a maximum term of twenty years

imprisonment. Dkt. ## 70, 71.   Both documents informed defendant that the sentencing judge had

the discretion to determine the ultimate sentence (within the statutory guidelines). Id. Defendant

was also instructed  numerous times at both the change of plea hearing and at the sentencing hearing

that he faced a maximum term of imprisonment of twenty years.   Additionally, at the change of plea

hearing, the judge explained that the sentence imposed may be different from one estimated by his

attorney, and that any estimate provided by counsel was not binding on the Court.   The record does

not support that defendant thought that he would receive four years, and he cannot demonstrate that

counsel was deficient in this respect.

Assuming, *arguendo*, that Ward incorrectly calculated defendant's sentence, defendant still

fails to demonstrate that he suffered prejudice.   "A miscalculation or erroneous sentence estimation

by defense counsel is not a constitutionally deficient performance arising to the level of ineffective

assistance of counsel." United States v. Parker, 720 F.3d 787 n.9 (10th Cir. 2013).   Even in the

unlikely event that Ward miscalculated defendant's sentence, this alone is insufficient to establish

prejudice.   On the contrary, Ward argued for a reduction of defendant's sentence by filing a motion

for a downward variance, resulting in a sentence lower than the range negotiated in the plea

agreement. Id. Defendant cannot show how he was otherwise prejudiced by receiving a sentence

shorter than what the guideline range originally calculated.

Defendant's allegation that Ward "gave him bad advice to plead guilty" and would not allow

him to withdraw his plea when he "found out" he was facing more than four years imprisonment is

also unsupported by the record.   Defendant alleges that Ward advised him "the judge would throw

the book at [him]" if he tried to withdraw his plea of guilty. Ward denies that he made the statement, and asserts that defendant "wanted me to contest some of [plaintiff's] evidence that it would have presented at trial. [] I explained that a sentencing hearing is not to contest guilt or innocence and that no judge before whom I have ever practiced will allow a defendant who protests their innocence to be sentenced but would, instead, withdraw the defendant's guilty plea and set the case for trial." Dkt. # 181-1, at 4. Defendant admitted in the petition to enter a guilty plea, in the plea agreement, and at the change of plea hearing that he was guilty. The Court provided defendant many opportunities to withdraw his guilty plea, and verified on numerous occasions that defendant's decision to plea guilty was freely and voluntarily made. Defendant also confirmed on multiple occasions that he was satisfied with his counsel's advice. His allegations against Ward are unsupported by the record and he has otherwise failed to explain why he did not object to pleading guilty during the numerous opportunities afforded to him.

Defendant's bare assertion that he would have gone to trial had Ward "correctly" informed him of his sentence and "suppressed" the allegedly false evidence during sentencing is insufficient to show that Ward rendered ineffective assistance of counsel. "[A] petitioner's mere allegation that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001) (internal quotation marks omitted). Defendant must show "that going to trial would have been rational in light of the objective circumstances of his case." Heard, 728 F.3d at 1184. Defendant cannot demonstrate how rejecting the plea agreement would have been rational based on the evidence plaintiff presented at the change of plea hearing. Id. Ward affirms that he "believe[s] that Mr. Moreland would have received a longer sentence if he went to trial because he would not have

received 'acceptance of responsibility' points [] and because the evidence at trial would reduce the likelihood of the Court granting a variance motion as it did in Mr. Moreland's case." Id. Instead of facing a statutory minimum sentence of ten years imprisonment, and maximum term of life imprisonment, defendant was sentenced to approximately eight years. It is clear that Ward negotiated a substantially lower sentence than what he faced had he proceeded to trial.

The Court finds and concludes, as to each of defendant's grounds, that he has failed to establish either prong of an ineffective assistance of counsel claim, and his § 2255 motion is denied.

**IV.**

The Court must also consider whether to issue a certificate of appealability (COA) on any issue raised in defendant's § 2255 motion. Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

18

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 163) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a COA on any issue raised in defendant's § 2255 motion, because defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS FURTHER ORDERED** that the motion for appointment of counsel by Heather Moreland as to defendant (Dkt. # 159) is **moot**.

**DATED** this 23rd day of January, 2024.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE